**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernest Wesley MILLER, Defendant-Appellant.**

**No. 73-1083.**

United States Court of Appeals,
Fifth Circuit.

April 8, 1974.

---

Ray Gene Smith, Wichita Falls, Tex., (Court-appointed), for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Robert G. Darden, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

By its order dated October 15, 1973, the Supreme Court of the United States vacated our judgment affirming Miller's conviction of possession with intent to distribute 240 pounds of marihuana in violation of 21 U.S.C.A. § 841(a)(1), and remanded the cause to this Court for further consideration in light of Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596.

The evidence is undisputed and uncomplicated. A United States border patrol officer saw Miller driving an automobile with non-local license plates, travelling west a mile from Hebbronville, Texas, on Highway 359, about 55 miles from the Mexican border. The officer stopped the vehicle and asked Miller for his identification. Miller responded that he was a citizen of the United States and displayed identification which indicated that his last name was Durante. After being asked to open the trunk in order to permit a

search for aliens, Miller stated that he was unable to do so with the ignition key, that he did not have a trunk key, and that he was driving the automobile for someone else. The officer then inspected the interior of the automobile and noticed a strong odor of marihuana. Miller and the automobile were taken to the border patrol office and, with the aid of a flashlight, the examining officer was able to see into the trunk through an opening behind the back seat, from which a radio speaker had been removed. He observed burlap bags in the trunk, which were then removed and found to contain marihuana.

Prior to trial Miller filed a motion to suppress the evidence and, after a full hearing, the motion was denied. The jury returned a verdict of guilty, and this appeal ensued.

Relying on our prior cases in which we observed that by Texas standards, 63 miles from the border is a short distance, United States v. Wright, 5 Cir. 1973, 476 F.2d 1027; United States v. McDaniel, 5 Cir. 1972, 463 F.2d 129; United States v. De Leon, 5 Cir. 1972, 462 F.2d 170; Martinez v. United States, 5 Cir. 1965, 344 F.2d 325, and further relying on a case in which we upheld a search made about 75 miles north of the Rio Grande River on the authority of § 287 of the Immigration and Nationality Act,[1] Ramirez v. United States, 5 Cir. 1959, 263 F.2d 385, we found the search in the case *sub judice* to be reasonably necessary for those enforcing the immigration laws to assure themselves that the automobile in question was not illegally carrying aliens, in spite of the fact that there was no contention that probable cause existed to search Miller's automobile.

In *Almeida-Sanchez* the petitioner's automobile was searched by a roving patrol some 20 miles north of the Mexican border. The Court held that "[i]n the

absence of probable cause or consent, that search violated the petitioner's Fourth Amendment right to be free of 'unreasonable searches and seizures.'" 413 U.S. at 273.

In the case now before us, both the search and our affirmance of the judgment of the district court occurred prior to the holding in *Almeida-Sanchez*. After that decision, Miller filed his petition for certiorari, which was granted, and our judgment was vacated. Miller urges that we must follow the *ratio decidendi* of *Almeida-Sanchez* because his conviction was not "final" in the sense that the time for appeal or certiorari had expired. Tehan v. Shott, 1966, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453; Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601. In the alternative, Miller argues that since our affirmance of his conviction was vacated and remanded by the Supreme Court for further consideration in the light of *Almeida-Sanchez*, it is manifest that the Court intended its decision to be given retrospective application. We disagree on both points.

In our view the finality *vel non* of the conviction is irrelevant. The Supreme Court heard Desist v. United States, 1969, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248, on certiorari, after affirmance of the convictions on direct appeal, on the question of the retroactivity of Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Under the principle established in *Katz*, evidence obtained through electronic eavesdropping and offered against the defendants would have been excluded. The defendants in *Desist* urged that the *Katz* principle was applicable to them since their cases were pending on direct review when *Katz* was decided. The Supreme Court rejected this argument, pointing out that in Johnson v. New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16

---

1. 8 U.S.C.A. § 1357. The Act provides that Immigration Service officers have the power to search vehicles for aliens without warrant within a reasonable distance from any external boundary of the United States. The term "reasonable distance," according to 8 C.F.R. § 287.1, means within 100 air miles from any external boundary of the United States.

L.Ed.2d 882 the Court had abandoned the approach of *Tehan-Linkletter, supra,* and had concluded that there were no jurisprudential or constitutional obstacles to the adoption of a different cut-off point:

> All of the reasons for making *Katz* retroactive also undercut any distinction between final convictions and those still pending on review. Both the deterrent purpose of the exclusionary rule and the reliance of law enforcement officers focus upon the time of the search, not any subsequent point in the prosecution, as the relevant date. Exclusion of electronic eavesdropping evidence seized before *Katz* would increase the burden on the administration of justice, would overturn convictions based on fair reliance upon pre-*Katz* decisions, and would not serve to deter similar searches and seizures in the future.

> \* \* \* \* \* \*

> In sum, we hold that *Katz* is to be applied only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after December 18, 1967 [the date of the *Katz* opinion]. Since the eavesdropping in this case occurred before that date and was consistent with pre-*Katz* decisions of this Court, the convictions must be affirmed.

*Id.* 394 U.S. at 253–254.

This approach has since been uniformly followed in search and seizure cases. In United States v. White, 1971, 401 U. S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453, relying on *Desist,* the Court held that even on direct review, the *Katz* principle applied only if the search occurred after the date of the *Katz* decision. In Hill v. California, 1971, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484, the Court, on direct review, held that the restricted scope of searches incident to arrest announced in Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, was applicable only if the search occurred subsequent to the date of *Chimel.* Williams v. United States, 1971, 401 U. S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388, reached precisely the same result as *Hill.* *See also* Scarpati v. Wainwright, 5 Cir. 1972, 469 F.2d 1154; United States v. Nooks, 5 Cir. 1971, 446 F.2d 1283, cert. denied, 404 U.S. 945, 92 S.Ct. 299, 30 L. Ed.2d 261; United States v. Avila, 5 Cir. 1971, 443 F.2d 792, cert. denied, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258. We are thus faced with the retroactivity question, even though the case *sub judice* was on direct appeal at the time *Almeida-Sanchez* was decided.

■ *In limine,* we think it to be of some importance that in the memorandum of the Department of Justice to the Supreme Court in this case, it was suggested that the Court might desire to remand the case for consideration of the retroactivity issue. Thus, the fact that our judgment was vacated and the case remanded for further consideration in the light of *Almeida-Sanchez,* particularly when the retroactivity issue had not been considered by this Court, does not imply that *Almeida-Sanchez* is necessarily retrospectively applicable to cases tried before it was decided. We take it that, had this been the Court's desire, certiorari could have been granted and this case summarily reversed on the authority of *Almeida-Sanchez,* rather than being remanded for further consideration. We thus move on to the question of whether *Almeida-Sanchez* should be given retrospective application.

We start with the general observation that the retroactivity of a "new rule" in an overruling decision is neither required nor prohibited by constitutional provisions, but is to be determined by judicial policy, after weighing "the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. . . . [T]his approach is particularly correct with reference to the Fourth Amendment's prohibitions as to unreasonable searches and seizures." *Linkletter, supra* 381 U. S. at 629.

It is clear that *Almeida-Sanchez* announced a "new rule" which invalidates

searches conducted without probable cause anywhere but at the border or its functional equivalent. That it was a case of first impression in the Supreme Court and was therefore not a clear break with past principles as established by prior Supreme Court decisions is not controlling. For example, in Lemon v. Kurtzman, 1973, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151, the Supreme Court refused to retroactively deny payments for educational services rendered to church-related schools which were incurred prior to its decision establishing a "new rule," saying:

> [S]tatutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity.

*Id.* at 199. *Accord,* Allen v. State Board of Elections, 1969, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1. A similar issue was presented in Chevron Oil Co. v. Huson, 1971, 404 U.S. 97, 92 S.Ct. 349, 30 L. Ed.2d 296, a case in which the district court, relying on Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 had determined that the Louisiana one-year statute of limitations barred a personal injury action under the Outer Continental Shelf Lands Act. Although this was also a case of first impression, the Supreme Court held that the "new rule" established in *Rodrigue* should not have been retroactively applied:

> Upon consideration of each of these factors, we conclude that the Louisiana one-year statute of limitations should not be applied retroactively in the present case. *Rodrigue* was not only a case of first impression in this Court under the Lands Act, but it also effectively overruled a long line of decisions by the Court of Appeals for the Fifth Circuit holding that admiralty law, including the doctrine of laches, applies through the Lands Act. . . . It cannot be assumed that [respondent] did or could foresee that this consistent interpretation of the Lands Act would be overturned. The most he could do was to rely on the law as it then was.

*Id.* 404 U.S. at 107.

While *Almeida-Sanchez* was likewise a case of first impression in the Supreme Court, an unbroken line of decisions by this Court held that searches conducted under the provisions of 18 U.S.C.A. § 1357 and "within 100 air miles from any external border," 8 C.F.R. § 287.1, were valid border searches. Consequently, when the Supreme Court struck down such searches made on less than probable cause, which were carried out under the statute and regulations, it establishes a new exclusionary rule which law enforcement officials could not have foreseen. If the primary object of the exclusionary rule is deterrence, foreseeability must be a prerequisite. It seems undeniable that the purpose of the new rule announced in *Almeida-Sanchez* with respect to the admissibility of unconstitutionally obtained evidence was to deter unreasonable searches and seizures in the future.

■ The purpose of the new rule is the bench mark for its application prospectively or retrospectively. In Williams v. United States, *supra,* the Supreme Court succinctly put it this way:

> Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances. (footnote omitted)

> It is quite different where the purpose of the new constitutional standard proscribing the use of certain evidence or a particular mode of trial is

**42**

not to minimize or avoid arbitrary or unreliable results but to serve other ends. In these situations the new doctrine raises no question about the guilt of defendants convicted in prior trials.

*Id.* 401 U.S. at 653. *See also* Adams v. Illinois, 1972, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202; Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

 While it has been said that "the extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities,'" Stovall v. Denno, *supra* at 298, it seems clear that the new rule formulated in *Almeida-Sanchez* was not fashioned to correct serious flaws in the fact-finding process at trial, and that the probabilities of the past practice of obtaining evidence as "border searches" hardly, if at all, affected the fair determination or the integrity of the fact-finding process. Manifestly, nothing about the admission of the 240 pounds of marihuana uncovered in the search in this case vitiated the essential fairness of the trial or conviction. The evidence was properly seized and admitted under the Fourth Amendment as construed and applied in our seminal case of Kelly v. United States, 5 Cir. 1952, 197 F.2d 162,[2] which we consistently followed thereafter. *See* United States v. De Leon, *supra,* and cases cited therein. The Ninth Circuit has travelled the same road. *See* Mienke v. United States, 9 Cir. 1971, 452 F.2d 1076; United States v. Miranda, 9 Cir. 1970, 426 F.2d 283; Fernandez v. United States, 9 Cir. 1963, 321 F.2d 283. In weighing the probabilities "against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice," Stovall v. Denno, *supra* 388 U.S. at 298, we are firmly convinced that *Almeida-Sanchez* should be given only prospective application. Therefore, because the search

and seizure in the case before us took place before the date of that decision, the marihuana was properly admitted into evidence.

Affirmed.

**2.** Search upheld as constitutional under 8 U.S.C.A. § 110, the precursor of § 1357, which

contained practically identical language authorizing searches.