**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

Jose **RODRIGUEZ–HERNANDEZ,**
**Defendant-Appellant.**

**No. 73–2750.**

United States Court of Appeals,
Fifth Circuit.

April 24, 1974.

Rehearing Denied May 15, 1974.

Robert L. Stone, Pensacola, Fla. (Court-appointed), for defendant-appellant.

William H. Stafford, Jr., U. S. Atty., Robert L. Crongeyer, Jr., Nick P. Geeker, Asst. U. S. Attys., Pensacola, Fla., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and INGRAHAM, Circuit Judges.

PER CURIAM:

Defendant appeals from his conviction for transporting unlawfully admitted aliens within the United States in violation of 8 U.S.C. § 1324(a)(2). He seeks reversal on three grounds: (1) that all information gained as a result of his initial stop by border patrol agents ought to have been suppressed; (2) that the evidence was insufficient to support a conviction; and (3) that the trial court erred in permitting cross examination of the accused concerning a prior felony conviction. We affirm.

Defendant, while driving a camper truck east on Interstate Highway 10 just outside Pensacola, Florida, was stopped by immigration officers on roving patrol. After halting the vehicle the agents, without need for a search, observed a number of men, apparently of Mexican descent, bedded down in the cabin. Defendant explained that the men were hitchhikers picked up on a highway in Mississippi. His twelve passengers admitted to the officers that they were aliens illegally in the United States. Defendant contends that no testimony concerning this highway encounter should have been permitted at trial because the initial stop violated his constitutional guarantee of freedom from unreasonable seizure.

The border patrol agents acted pursuant to the authority conferred by 8 U.S.C. § 1357(a), which provides in part that "any officer or employee of the [Immigration] Service authorized under regulations prescribed by the Attorney General shall have power without warrant . . . (3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any . . . vehicle . . . ." The term "reasonable distance" has been defined by regulation as within 100 air miles of any external boundary of the United States [1]. In this case the stop occurred some 10 miles from an external boundary, the coastline of the Gulf of Mexico.

Defendant's argument for the constitutional invalidity of this official action authorized by federal statute and regulation derives from the recent decision of Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596. In that case the Supreme Court held that, notwithstanding the attempted congressional dispensation in Section 1357, searches and seizures by border officials are subject to the same Fourth Amendment restrictions as any other police action, unless they are conducted at the physical border or its functional equivalent.

Were we to apply the teaching of *Almeida-Sanchez* to the facts of this case, serious doubt would exist as to whether the contested stop, made on less than probable cause and in the absence of even the "reasonable suspicion" recognized in Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, could survive. This Court has recently determined, however, that the constitutional enlightenment provided by *Almeida-Sanchez* should not be applied to the analysis of official action occurring prior to the date of that opinion. United States v. Miller, 1974, 492 F.2d 37. The stop involved here occurred some two months before the decision in *Almeida-Sanchez* was issued; and under the Fourth Amendment precepts announced in *Miller* for pre-*Almeida-Sanchez* cases, no constitutional infirmity exists in this *stop for identification* of defendant's truck within the geographic boundaries established by regulation and on a highway known by immigration officials as a primary route

---

1. 8 C.F.R. § 287.1.

for the smuggling of aliens into Florida for work during the picking season.[2]

■ Defendant's argument of insufficient evidence rests largely on the fact that the testimony of a key Government witness was impeached by the introduction of his prior inconsistent statements. While proof of previous contradictory assertions would weaken the effectiveness of any witness, this Court cannot substitute its own assessment of the truthfulness of the witness for the final determination reached by the jury.

"It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."

Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680.

■ The trial court charged the jury that in order to obtain a conviction for violation of 8 U.S.C. § 1324(a)(2) the Government must prove beyond a reasonable doubt that:

" . . . the defendant transported or moved the aliens described in the information, or any one of them, within the United States; that the aliens, or any one of them so transported or

moved, had not been duly admitted to the United States by an immigration officer or was not lawfully entitled to enter within the United States; and that such was known by the defendant; and that the defendant knew or had reasonable grounds to believe that the last entry of the aliens or any one of them occurred less than three years prior to [the time of the transportation]; and that the defendant did the above acts in furtherance of the violation of the law by the aliens or any one of them and that the defendant did the forgoing wilfully and knowingly."

Defendant does not dispute the accuracy of this instruction, and the evidence adduced at trial was ample to support a conviction under its terms.

■ Defendant testified in his own behalf. The final contention of error arises from the fact that on cross-examination he was required to give information concerning a prior felony conviction for illegal transportation of aliens. Evidence of prior conviction of a felony or of a misdemeanor involving moral turpitude is admissible for the purpose of impeaching the credibility of a witness. United States v. Saitta, 5 Cir. 1971, 443 F.2d 830, cert. denied 404 U.S. 938, 92

2. We wish to emphasize in this respect that *Miller* cannot be read as approving every stop and search conducted by border patrol agents within 100 miles of an external boundary prior to June 21, 1973, the date of the opinion in *Almeida-Sanchez*. This Court had explicitly recognized, even before that landmark Supreme Court decision, that Fourth Amendment considerations would necessarily limit the constitutional scope of 8 U.S.C. § 1357 and its attendant regulations.

"[P]roximity to the frontier does not automatically place a 100-mile strip of citizenry within a deconstitutionalized zone, with its attendant de-escalation of Fourth Amendment requirements. We would find it peculiar, for example, if massive searches were permissible in downtown Cleveland or Buffalo on the basis of a 'border search' theory. Therefore, while 'border search' is a convenient phrase to describe a reasonableness standard for searches pursuant to the customs and immigration laws, it is not sufficiently internally descriptive to justify automatically the reasonableness of

all searches conducted for customs and immigration purposes within a certain proximity to national borders."

United States v. McDaniel, 5 Cir. 1972, 463 F.2d 129.

In Marsh v. United States, 5 Cir. 1965, 344 F.2d 317, this Court ordered suppression of the fruits of an alleged border search conducted 63 miles from the border, noting that:

'[I]f the Government seeks to qualify the action as a geographically 'extended' border search, it must show at least the circumstances known to the officers at the border which reasonably justified the request relayed to officers in the interior. Any other doctrine would render travelers who had recently entered this country subject to almost unlimited arrest and search without any cause save the simple request of a border officer to one at an interior point. In our view this cannot be squared with the test of reasonableness under the Fourth Amendment."

344 F.2d at 325.

S.Ct. 269, 30 L.Ed.2d 250. A defendant who takes the stand puts his credibility in issue and is subject to such impeachment within the sound discretion of the trial court. Both the questioning by the prosecutor and the court's limiting instruction to the jury [3] were within the parameters expressly approved by this Court in Bendelow v. United States, 5 Cir. 1969, 418 F.2d 42, and can provide no ground for reversal.

Affirmed.

3. The trial court charged that:
   "Evidence of a defendant's prior conviction of a felony is to be considered by the jury only insofar as it may effect the credibility of the defendant as a witness and must never be considered as evidence of guilt of the crime for which the defendant is on trial."

