UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald BOWMAN, Defendant-Appellant.

No. 73-3199.

United States Court of Appeals,
Fifth Circuit.

Oct. 25, 1974.

John E. Fitzgibbon, Laredo, Tex. (Court-appointed), for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

WISDOM, Circuit Judge:

In this case involving a pre-*Almeida-Sanchez*[1] border search, the district court, sitting without a jury, convicted Ronald Bowman on four counts charging violations of 21 U.S.C. §§ 176a[2] and

---

1. Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596.

2. The relevant portions of § 2(h) of the Narcotic Drugs Import and Export Act, 70 Stat. 570, formerly 21 U.S.C. § 176a, repealed by Act of Oct. 27, 1970, Pub.L.No. 91–513, § 1101(a)(2), (9), 84 Stat. 1291, provides:

"Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitiates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported

174.[3] Count 1 charged him with smuggling fifty pounds of marihuana into the United States. Count 3 levied the same charge with respect to one ounce of heroin. Count 2 charged knowing transportation and concealment of the marihuana while knowing it to have been illegally imported. Count 4 made the same charge with respect to the heroin. On June 9, 1969, Bowman was sentenced to serve four concurrent ten-year sentences. He appeals his conviction as to all counts, alleging that he was convicted on the basis of evidence seized in an unlawful search and that the evidence was insufficient to support his conviction. We affirm.

At trial, Bowman declined to testify and presented no witnesses in his own behalf. All of the evidence introduced consisted of the testimony of government agents and experts.

At about 8:45 in the evening on June 26, 1969, Bowman and Everett E. Mason crossed the International Bridge at Laredo, Texas, returning to the United States, in a rented automobile driven by Mason.[4] At the Customs Inspection Station they declared three bottles of liquor and were referred to the Secondary Inspection Station for payment of the duty. There a search of the vehicle was made. The record does not indicate how thorough that search was, but all that was turned up was a traveling kit and two new leather suitcases, both empty, which had been acquired in Mexico. There was no other luggage and, apparently, no clothing. While the search was being conducted, the supervisory customs inspector learned in conversation with Bowman and Mason that they had flown from St. Louis, where both resided, to San Antonio, had rented a car there, and had driven it through Laredo into Nuevo Laredo, Mexico. They had remained in Mexico for one or perhaps two hours, and were then on their way back to St. Louis to report back for work.

The inspector found these circumstances suspicious. After Bowman and Mason had been allowed to proceed, he telephoned the Assistant Agent in Charge, Pardaen, at his home. He described Bowman and Mason, and their automobile, and related the conversation he had had with them and the information he had obtained. Pardaen and another agent, Jordan, promptly drove to a

or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned.

. . . .

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

3. The relevant portions of § 2 of the Act of February 9, 1909, 35 Stat. 614, formerly 21 U.S.C. § 174, repealed by Act of Oct. 27, 1970, Pub.L.No. 91–513, § 1101(a)(2), (4), 84 Stat. 1291, provides:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States shall be imprisoned.

. . . .

"Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Heroin, a derivative of opium, is within the meaning of the term "narcotic drug" as used in 21 U.S.C. § 174. See 21 U.S.C. § 171, which refers to § 3228(g) of the Internal Revenue Code of 1939, now 26 U.S.C. § 4731(a).

4. Mason was charged, with Bowman, on all four counts. On the motion of the United States Attorney, however, the charges against Mason were dismissed, after he pleaded guilty to a superseding indictment charging only a marihuana violation. He is not a party to this appeal. He did not testify at Bowman's trial.

point on the northbound highway leading to San Antonio, three miles north of the city limits of Laredo, in order to intercept the vehicle. There was a Border Patrol checkpoint about eight miles north of the city on the same road. Pardaen alerted this checkpoint and other Customs units in the area to be on the lookout for the described vehicle. At about 11:00 that same evening, Agents Pardaen and Jordan spotted and stopped the defendant's vehicle. They identified themselves as customs agents and stated that they intended to make a customs search of the car. When the trunk was opened, the agents detected the odor of marihuana and, handling the suitcases, noticed that they seemed heavy. Asked what was in the suitcases, Bowman answered, "Clothing." Both suitcases were locked and Pardaen asked for the keys. Bowman responded, "What keys?" Thereupon, the suspects were told to empty the contents of their pockets onto the hood of agent Pardaen's car. Mason produced, among other things, the keys to the suitcases, and Bowman produced a billfold and two or three small notebooks. One of the notebooks, on later inspection, was found to contain an entry reading, "one ounce heroin, one ounce pure dope, six hundred dollars." The suitcases were opened, and inside them were found pillow slips, marked "Holiday Inn", containing about fifty pounds of marihuana. At this point the defendants were read their *Miranda* warnings and placed under arrest. They were also advised that they would be taken back to the Customs Inspection Station at the International Bridge for processing and a further search in better lighting conditions.

As the agents were preparing to leave for the Customs Station, Bowman asked, two or three times, if he could have his jacket. There were two jackets in the car, one of brown vinyl, the other a gray, knit sweat jacket. He was told that his belongings would be returned to him after the search had been completed at the bridge. The search at the bridge was conducted out of the presence of the two defendants. In the toilet kit, agents found a Hansen scale. In a pocket of the gray sweat jacket they found roughly one ounce of heroin fitted into a finger of a glove. Later, when Bowman and Mason were allowed to reclaim their possessions, Mason claimed the shaving kit, and its contents, except for the scale, and the brown vinyl jacket. Neither claimed the gray sweat jacket.

## I.

The validity of the challenged search hinges on whether it may be properly characterized as a "border search". In addressing that issue, we have no occasion to pass on the applicability of the Supreme Court's decision in Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, to the facts of the present case. The search at issue was conducted before *Almeida-Sanchez* was decided, and in United States v. Miller, 5 Cir. 1974, 492 F.2d 37, affirmed en banc, 499 F.2d 1247, this Court held that Almeida-Sanchez must be given prospective effect only.

Customs agents have broad authority to stop and search for contraband. 19 U.S.C. §§ 482, 1581, and 1582. But their searches must, of course, meet Fourth Amendment requirements of reasonableness. United States v. Diemler, 5 Cir. 1974, 498 F.2d 1070; United States v. McDaniel, 5 Cir. 1972, 463 F.2d 129, cert. denied, 1973, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041; Morales v. United States, 5 Cir. 1967, 378 F.2d 187; Thomas v. United States, 5 Cir. 1967, 372 F.2d 252. To characterize a search by a customs agent as a "border search" is, in essence, "a short-hand method of stating that a search is, under the circumstances, a 'reasonable' stretch of the usual Fourth Amendment standard of 'probable cause'. . . ." United States v. McDaniel, 5 Cir. 1972, 463 F.2d 129, cert. denied, 1973, 413 U. S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041. What is reasonable will, of course, depend on the circumstances of the case. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. At

the border itself, the search of an incoming person or vehicle may be initiated on little or no suspicion. "The agent's statutory authority to search is virtually unfettered except perhaps as to due process concerning the manner, not the cause, of the search." United States v. Storm, 5 Cir. 1973, 480 F.2d 701, 704. See also Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. It is simply not possible, however, to police the borders effectively if enforcement is confined to the border itself and its immediate vicinity. The Fourth Amendment accordingly allows reasonable latitude to customs officials to carry out searches for contraband somewhat within the nation's borders, in the general border area. There agents may stop and search persons and vehicles without a warrant and on less than probable cause but without the license they enjoy at the border itself. See United States v. Storm, 5 Cir. 1973, 480 F.2d 701; Thomas v. United States, 5 Cir. 1967, 372 F.2d 252.

■■ Mere proximity to the border does not alone justify such a search. United States v. Storm, 5 Cir. 1973, 480 F.2d 705. To hold that a search may be reasonably justified as an "extended border search" requires a finding that the agent who conducted the search had reasonable cause at the time of the search to suspect a violation of the customs laws. See 19 U.S.C. § 482; Morales v. United States, 5 Cir. 1967, 378 F.2d 187; Mansfield v. United States, 5 Cir. 1962, 308 F.2d 221. And, at the time of the search, the suspect must have had some reasonably direct connection with the border, considering such factors as the cause for the initiation of the search, the distance from the border and the original point of entry, and the time elapsed since entry. See United States v. Bursey, 5 Cir. 1974, 491 F.2d 531; United States v. Steinkoenig, 5 Cir. 1973, 487 F.2d 225; United States v. McDaniel, 5 Cir. 1972, 463 F.2d 129, cert. denied, 1973, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041; United States v. Warner, 5 Cir. 1971, 441 F.2d 821;

cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58.

■ The appellant argues that in his case, the agents had no cause for suspicion, that his trip to Mexico was unexceptional and indistinguishable from that of any tourist. We cannot agree. The suspects had made a long and expensive trip from St. Louis, Missouri to Nuevo Laredo, a Mexican border town described by the trial judge as the "Mecca of the narcotic user." They carried no luggage to speak of, stayed only a couple of hours, and returned to the United States carrying only two empty suitcases, stating their intent to return directly to St. Louis. We agree with the trial court that, to an experienced inspector, these circumstances might arouse a reasonable suspicion that a narcotics delivery had been arranged in Mexico to take place at or near the border.

The appellant also contends that at the time of the search he had no cognizable connection with the border. Specifically, he argues that once he had been searched at the border checkpoint and then passed through into the United States, his connection with the border had been severed, and any subsequent search could not be justified as a border search. On the facts of this case, we must disagree. It is settled that passage through an initial checkpoint does not in itself suffice to sever the entrant's connection with the border. See, for example, United States v. Reagor, 5 Cir. 1971, 441 F.2d 252; United States v. Hill, 5 Cir. 1970, 430 F.2d 129; Morales v. United States, 5 Cir. 1967, 378 F.2d 187.

Certainly there comes a point after a border crossing where an individual's relationship with the border is so attenuated that a search may not be justified as a "border search". Such a case was United States v. Bursey, 5 Cir. 1974, 491 F.2d 531. There the suspects crossed the border. On the following day, on the basis of an informant's tip that the suspects were seeking narcotics, a fruit-

less search was conducted by customs officials. Later, a second informant relayed a tip that the suspects would attempt to purchase narcotics in Rio Grande City, Texas. Surveillance, with some interruptions, was maintained on the suspect vehicles. Four days after the suspects had entered the United States and eighty miles north of the border, the suspects were stopped and searched. Thus, at the time of the second search, long after the border had been crossed and at some distance from it, there was no longer any basis for suspecting a Mexican connection or contact. The second informant's tip had indicated that the suspects were seeking narcotics in Texas, not Mexico. The standard of reasonableness is of limited elasticity, and in *Bursey* customs agents had stretched it too far.

The appellant's case, however, presents circumstances of a different order. The suspicion of a Mexican transaction or contact was still fresh at the time of the search. It had been attenuated by neither time nor distance. The search was within a reasonable time of the appellant's entry and within a reasonable distance from the crossing point. Nor had any new information intervened to vitiate the initial suspicion. In these circumstances, we find the search was reasonable.

## II.

The appellant contends that the court, in weighing the evidence, was not entitled to rely on the statutory presumptions created by 21 U.S.C. §§ 174 and 176a. He further maintains that, without the aid of these presumptions, there is insufficient evidence, as to all four counts, to support his conviction. We turn first to the conviction under Count 4. Because of the conclusion we reach as to the conviction under this count, it is unnecessary to reach the other issues raised on this appeal.

The elements of the offense charged under Count 4 are (1) knowing concealment and transportation of heroin that (2) was illegally imported (3) while knowing it to have been illegally imported. The statutory presumption of § 174 provides that proof of possession may serve as an adequate evidentiary basis for conviction. 21 U.S.C. § 174. In essence, the fact-finder is permitted to infer from proof of possession that the heroin was illegally imported and that the defendant knew that it had been illegally imported. This presumption has been consistently upheld as it applies to heroin.[5] See Turner v. United States, 1970, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610; Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; Walker v. United States, 5 Cir. 1960, 285 F.2d 52. Accordingly, the viability of the conviction under Count 4 turns on whether the defendant could properly be found to have had "possession" of the heroin seized.

"Possession", within the meaning of § 174, may be either actual or constructive, exclusive or joint, and may be proved by circumstantial as well as direct evidence. See Smith v. United States, 5 Cir. 1967, 385 F.2d 34; United States v. Mendoza, 5 Cir. 1970, 433 F.2d 891, cert. denied, 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225. There is ample evidence in the record to support a finding of at least joint and constructive possession.

The defendant had, two or three times, asked for "his jacket" before the two jackets had been searched. When, after they had been searched, he was given the opportunity to claim his possessions, he claimed no jacket. His companion claimed the "clean" jacket. The jacket containing the heroin went unclaimed. At the same time, the defendant had in his possession a notebook with an inscription indicating the pur-

5. We express no opinion here as to the validity of the inference under 21 U.S.C. § 174 that the possessor of heroin is himself its smuggler, nor did the Court in *Turner* reach that issue. Turner v. United States, 1970, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610. The *Turner* Court considered only the inference under § 174 that the possessor knew the heroin to have been illegally imported.

chase of one ounce of heroin, the same quantity found in the unclaimed jacket. From these circumstances the court could reasonably infer that the defendant at least shared "dominion and control" over the heroin. Accordingly, the conviction as to Count 4 is affirmed.

We do not reach the other points raised on this appeal. Because we have affirmed the appellant's conviction under one count, and because the sentences imposed under all counts were concurrent ten year sentences, consideration of other points raised on appeal is unnecessary under the "concurrent sentence" doctrine. Kiyoshi Hirabayashi v. United States, 1943, 320 U.S. 81, 63 S. Ct. 1375, 87 L.Ed. 1774; United States v. Johnson, 5 Cir. 1972, 469 F.2d 973; United States v. Easterly, 5 Cir. 1971, 444 F.2d 1236; United States v. Laite, 5 Cir. 1969, 418 F.2d 576.

The judgment of conviction is affirmed.