**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sharon Maria NEWELL and Maria del
Socorro Franco Guerra,
Defendants-Appellants.**

No. 73–2538.

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1975.

Rehearing and Rehearing En Banc
Denied March 4, 1975.

Roberto  J.  Yzaguirre,  Knox  Jones,
McAllen, Tex., for defendants-appellants.

Anthony J. P. Farris, U. S. Atty., Edward B. McDonough, Jr., James R. Gough, Mary L. Sinderson, Asst. U. S. Attys., Anna E. Stool, Atty., Dept. of Justice, Houston, Tex., for plaintiff-appellee.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

TUTTLE, Circuit Judge:

Sharon Maria Newell and Maria del Socorro Franco Guerra appeal their convictions for one count each of knowingly and intentionally possessing, with intent to distribute, marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). They contend that the search during which the marijuana was discovered violated their rights under the Fourth Amendment of the United States Constitution.

We agree and therefore reverse their convictions.

## I.

"As is usual in the search and seizure area, the particular factual setting is of critical importance to the disposition of this case." United States v. Bursey, 491 F.2d 531, 532 (5th Cir. 1974). The facts of this case are simple and undisputed.

The appellants were driving a late-model passenger automobile bearing Starr County, Texas, license plates north on Texas Highway 16 in the early evening of March 3, 1973. Agent Jose E. Garza of the United States Border Patrol, who was driving south on Highway 16 at the same time, noticed the appellants' car a few miles south of Hebronville, Texas, and made a u-turn to pursue it. The Agent lost sight of the appellants' vehicle in the heavy Saturday evening traffic, but re-sighted it approximately one-half hour later, at 8:30 p. m., at a point four miles north of Hebronville on Highway 16.

Agent Garza stopped the appellants' vehicle at this point, which is approximately 56 miles north of the Mexican border, to make a "routine immigration check" for illegal aliens. After ascertaining Ms. Newell's American citizenship, he asked Ms. Newell to open the trunk of the car, which she did. He saw in the trunk a leather suitcase, a metal footlocker[1] and two overnight bags. He felt the footlocker, which, he testified "seemed a little heavier than usual." He asked Ms. Newell to open the footlocker, but she replied that she did not have the necessary key. He then "cracked" open the footlocker by using tools and detected a "strong odor of marijuana." Further search produced sixty-three pounds of semi-refined marijuana in brick form.

Prior to trial, the defendants moved to suppress the evidence of the marijuana on the ground that it was discovered during an illegal search, but the motion was denied. The defendants waived trial by jury and were found guilty by the district court.

## II.

The appellants argue that the warrantless search that led to their convictions was illegal under Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). However, the search in this case occurred on March 3, 1973, and this Court en banc, United States v. Miller, 499 F.2d 1247 (5th Cir. 1974), has held that searches prior to June 21, 1973 (the effective date of *Almeida-Sanchez*) must be governed by pre-*Almeida-Sanchez* law. Applying pre-*Almeida-Sanchez* law as we must then to the facts of this case, we hold that the search was illegal.[2]

Although the extreme parameters of the "border search" doctrine under pre-*Almeida-Sanchez* law have not always been clear, there is virtually no dispute over the basic elements of the doctrine.

---

1. No other description nor any dimensions of the footlocker were put into the record.

2. Our holding therefore makes it unnecessary to await the decision of the Supreme Court in

United States v. Ortiz (9th Cir. June 19, 1974), cert. granted, —— U.S. ——, 95 S.Ct. 40, 42 L.Ed.2d 47 (1974), which raises the question of the retroactivity of *Almeida-Sanchez*.

"The so-called border search has long been recognized as an exception to both the warrant and probable cause requirements of the Fourth Amendment to the Constitution." United States v. Diemler, 498 F.2d 1070, 1071 (5th Cir. 1974). United States v. Thompson, 475 F.2d 1359 (5th Cir. 1973); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). However, the exception—which like others in the area is "jealously and carefully drawn," Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)—does not extinguish the general rule imposed by the Fourth Amendment: the search must still be reasonable. United States v. Diemler, *supra*; United States v. Rodriguez-Hernandez, 493 F.2d 168 (5th Cir. 1974); United States v. Warner, 441 F.2d 821 (5th Cir. 1971), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

This Court has developed two tests of the reasonableness of "border searches" by "roving patrols":

1. *Border Nexus.* "[S]ome connection or contact with the border must be shown, even though the vehicle itself need not have crossed the border." United States v. Diemler, *supra*, at 1072. The test may be satisfied by "showing that the vehicle or its passengers have recently crossed the border or been in touch with those who have . . ." United States v. Storm, 480 F.2d 701, 704, n. 5 (5th Cir. 1973); United States v. Speed, 497 F.2d 546 (5th Cir. 1974). *See, also,* United States v. Byrd, 494 F.2d 1284 (5th Cir. 1974); United States v. Bursey, *supra*; United States v. Steinkoenig, 487 F.2d 225 (5th Cir. 1973); Marsh v. United States, 344 F.2d 317 (5th Cir. 1965).

2. *Reasonable Suspicion.* "Although the probable cause standard of the Fourth Amendment need not be met, the officer conducting the search must have a reasonable suspicion of illegal activity." United States v. Diemler, *supra*, 498 F.2d at 1072; United States v. Daly, 493 F.2d 395 (5th Cir. 1974); United States v. Storm, *supra*; United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972), cert. denied 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1972); Morales v. United States, 378 F.2d 187 (5th Cir. 1967); Thomas v. United States, 372 F.2d 252 (5th Cir. 1967); Marsh v. United States, *supra*. This test is circumscribed by the requirement that the suspected illegal activity be not merely any violation of the law, but a violation of the Custom or Immigration law. United States v. Diemler, *supra*; United States v. McDaniel, *supra*. *See, also* United States v. Solis, 469 F.2d 1113, 1114–1115, n. 2 (5th Cir. 1972), cert. denied, 410 U.S. 932, 93 S.Ct. 1375, 35 L.Ed.2d 594 (1973).

The burden is on the Government to prove that both tests are satisfied. United States v. Diemler, *supra*; United States v. Marsh, *supra*. *See, generally,* Coolidge v. New Hampshire, *supra*, 403 U.S. at 454–455, 91 S.Ct. 2022. Where the Government fails to carry the burden of proving that both tests have been met, "those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search." Carroll v. United States, *supra*, 267 U.S. at 154, 45 S.Ct. at 285; United States v. Storm, *supra*, 480 F.2d at 704; *Marsh, supra*, 344 F.2d at 325.

In the case before us, the Government has failed to meet either test.

A. *Border Nexus.*

The record clearly demonstrates that the Government introduced absolutely no evidence that either the vehicle or its passengers had any contact with the border or with those who had. Although this failure is enough to require reversal, United States v. Diemler, *supra*, we proceed to consider the second test as well, because the Government seems to suggest that its evidence of facts amounting to "reasonable suspicion" in this case imply the requisite border nexus.

## B. *Reasonable Suspicion.*

■ The Government rests its case on the validity of the search entirely on two facts that it argues amount to a reasonable suspicion that the appellants had violated a Customs or Immigration law: 1) that the automobile carried two women travelling alone and at night; and 2) that the automobile bore out-of-*county* license plates.

A careful examination of the record reveals that the first fact relied upon by the Government is completely without basis. Agent Garza testified that when he first approached the appellants' vehicle after stopping it he did not know that its occupants were female. It was only when he addressed the driver, Ms. Newell, that he discovered that both parties were women. The Agent's decision to stop the appellants' vehicle thus had nothing to do with the fact that the automobile carried two women driving alone at night.[3]

The record does show that the appellants' automobile bore out-of-county license plates. This fact, argues the Government, brings the case within the ambit of United States v. Thompson, 475 F.2d 1359 (5th Cir. 1973), where this Court found that the same agent (Garza) at almost the same point (one mile north of Hebronville) had reasonable suspicion to stop and search a vehicle because it bore out-of-*state* license plates (Arkansas) and was following a circuitous route[4] from the border.

■ The Government's analogy of *Thompson*, with an out-of-state car taking a circuitous route, to the case before us, with an in-state car taking a direct route, is obviously imperfect.[5] The analogy loses any merit whatsoever when it is realized that the appellants' vehicle bore not just any out-of-county license plates but plates denoting Starr County—a county adjacent to Jim Hogg County, where Hebronville is located. In this light, the facts relied upon by the Government to constitute "reasonable suspicion" amount to no more than that a local car occupied by two persons was driving on a direct route north from their adjacent home county. If these facts were allowed to constitute "reasonable suspicion," then agents would be authorized to stop and search any automobile that was proceeding north on one of the highways in the area and not bearing in-county license plates. This result would render the requirement of "reasonable suspicion" nugatory and make the Fourth Amendment a dead letter. There is simply no basis in the law to support such a sweeping result. We have said time and again that mere proximity to the border does not automatically place the citizenry "within a deconstitutionalized zone." United States v. McDaniel, *supra*, 463 F.2d at 132–133; United States v. Diemler, *supra*, 498 F.2d at 1072; United States v. Speed, *supra*, 497 F.2d at 548. As the Supreme Court said nearly fifty years ago in a similar context, "It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search." Carroll v. United States, *supra*, 267 U.S. at 153–154, 45 S.Ct. at 285.

In short, the Government has failed completely to produce any facts that

---

3. Moreover, the Government, doubtless recognizing the insubstantiality of this ground, abandoned it at oral argument.

4. The Court found that the vehicle in *Thompson* had travelled an indirect route, via State Highway 359, from Laredo toward Freer, rather than the direct route via U.S. Highway 59, and implicitly sanctioned the Agent's conclusion that it was "unusual that an out-of-*state* car would travel this roundabout route [Emphasis added]." 475 F.2d at 1363.

5. It must be further noted that Laredo, the western terminus of State Highway 359, is a port-of-entry from Mexico, while Zapata, the southern terminus of U.S. Highway 16, is not. The nearest ports-of-entry to Zapata are Laredo and Roma, 40 and 45 miles away, respectively. Thus the presumption of border contact in *Thompson* is wholly lacking in the case before us.

**406**

would demonstrate that the appellants had any nexus with the border or that the Agent had any grounds to hold reasonable suspicion that the appellants had violated a Customs or Immigration law. This failure makes the search of the appellants' vehicle illegal, and the judgments of conviction are accordingly reversed.