**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eugene Cecil McKIM, Defendant-Appellant.**

**No. 74–1335.**

United States Court of Appeals, Fifth Circuit.

March 17, 1975.

---

Before RIVES, WISDOM and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

Eugene Cecil McKim appeals his conviction for escape from federal custody in violation of 18 U.S.C. § 751(a).[1] The indictment charged that he had willfully escaped from the Jim Hogg County Jail in Hebbronville, Texas.[2] The evidence showed that officers of the United States Border Patrol arrested McKim near Hebbronville on September 9, 1972, while in possession of about sixty pounds of marijuana. He was turned over to a United States Customs officer, who lodged him in the Jim Hogg County Jail in accordance with a contract between the United States Government and the local authorities for the temporary detention of federal prisoners. Two days later and before he could be brought before a United States magistrate McKim and a cellmate escaped through a large hole they had managed to make in the wall of the jail. McKim was rearrested the next day.

He was not, however, tried for the offense of escape from federal custody until well over a year after these events. Instead, he was tried and convicted of importation, possession, and conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a), 841(a)(1), and 960(a)(1). This conviction was reversed on appeal on the ground that the border patrol agents lacked reasonable suspicion or probable cause for stopping and search-

Oscar J. Pena, Laredo, Tex. (Court-appointed), for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Daniel V. Alfaro, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

1. 18 U.S.C. § 751(a):

"Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both."

2. The indictment reads as follows:

"THE GRAND JURY CHARGES:

That on or about September 11, 1972, in the Laredo Division of the Southern District of Texas, and within the jurisdiction of this Court, Eugene Cecil McKim did unlawfully, willfully, and knowingly escape from an institution in which he was confined by order of an officer of the United States, pursuant to lawful arrest, to-wit: the Jim Hogg County Jail, Hebbronville, Texas. (Violation: Title 18, United States Code, Section 751(a).)"

ing McKim's automobile. United States v. McKim, 5 Cir. 1973, 487 F.2d 305.[3]

The opinion reversing the marijuana conviction was rendered November 12, 1973; the indictment for escape was filed on November 26, 1973. During the course of oral argument in this Court, counsel for the Government conceded that the decision to seek this indictment from the grand jury was made because the Government had not prevailed in the earlier appeal. McKim had been indicted twice before for the offense of escape, and on each occasion the district court granted the Government's motion to dismiss the indictment under Fed.R. Crim.P. 48(a) without the consent of the defendant.

McKim raises five contentions in this appeal. He says, first, that his conviction should be set aside because he was denied a speedy trial. Second, he contends that the evidence was insufficient to convict because it did not prove what he asserts are two necessary elements of the offense of escape. Third, he argues that the indictment was fatally defective in that it failed to allege that the arrest establishing the custody from which he escaped was for a felony. Fourth, he says that the trial court incorrectly charged the jury in that it omitted any reference to what he maintains is the necessity of proving, under 18 U.S.C. § 751(a) and the indictment, that the arrest was lawful and that it was for a felony. Finally, he contends that, in the event we uphold his conviction, the maximum sentence for escape the trial court imposed should run either from the date of his apprehension, September 12, 1972, or at least from the date this Court re-

versed his conviction on the marijuana charge, rather than from the date sentence was imposed.

We have concluded that McKim's conviction must be reversed.

I.

The Supreme Court considered the standards to be applied to determine whether an accused's Sixth Amendment right to a speedy trial has been denied in Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The Court rejected an approach focused primarily on the delay between indictment and trial, and declined to hold that an accused's failure to demand a speedy trial constituted a "waiver" of the right. It noted, instead, that both the delay involved and assertion or nonassertion of the right were only factors to be weighed with other relevant factors in a "balancing test" of the conduct of the prosecution and the defense, along with the reason proffered for the delay and the prejudice, if any, to the defendant.[4]

"[T]he Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' " the Supreme Court noted in United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468. Marion involved a delay of nearly three years between the conclusion of the alleged criminal scheme that was the subject of the prosecution and the return of the indictment. The Court reversed the dismissal of the indictment, stating that there is no constitutional right to a speedy indictment; prejudice must be shown. In Marion no actual prejudice had been proved or even asserted, and,

3. The Court found that the facts in the case closely resembled the facts of Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, and did not consider whether the search was lawful under the standard prevailing before Almeida-Sanchez was decided. Later, this Court decided United States v. Miller, 5 Cir. 1974, 492 F.2d 37, holding that Almeida-Sanchez should not be given a retroactive sweep. For a recent exposition of the law to be applied in cases that arose before Almeida-Sanchez, see Unit-

ed States v. Newell, 5 Cir. 1975, 506 F.2d 401; United States v. Bowman, 5 Cir. 1974, 502 F.2d 1215; United States v. Hart, 5 Cir. 1975, 506 F.2d 887 (collecting Fifth Circuit Texas border search cases decided in the past ten years).

4. See generally, Godbold, Speedy Trial—Major Surgery for a National Ill, 24 Ala.L.Rev. 265 (1972); Note, Right to a Speedy Trial, 20 Stan.L.Rev. 476 (1968).

although actual prejudice stemming from prosecutorial delay might be demonstrated at trial, the appellees' due process claims were "speculative and premature." 404 U.S. at 326, 92 S.Ct. at 466, 30 L.Ed.2d at 482.

■ *Barker* and *Marion* lead us to conclude that, in the circumstances of this case, McKim was not denied a speedy trial. He has made no showing—indeed, has not attempted to show—actual prejudice. The first indictment was filed on January 29, 1973. The trial on the third indictment was held on January 22, 1974, so that the actual delay between the time of the first indictment and the trial, while substantial, is not so great as to give it decisive weight. The troublesome fact here is that the indictment was filed twice, twice dismissed without consent of the defendant, and filed a third time, as Government counsel conceded in this Court, because the Government did not prevail in McKim's appeal of his marijuana conviction. To be sure, the Government's conduct here is distinguishable from the "deliberate attempt to delay the trial in order to hamper the defense" that the Court in *Barker* noted should be "weighed heavily" against the Government. 407 U.S. at 531, 92 S.Ct. 2182, 2192. But that is the most favorable thing that can be said of it. The prosecutor's motive in seeking an indictment in the first place may be irrelevant to the speedy trial issue, but his motive in twice obtaining indictments and twice moving to dismiss them is relevant to the inquiry whether the delay in bringing the defendant to trial was justified.

Nevertheless, there is no showing of prejudice to the defendant, the third indictment was filed within the statute of limitations, and the trial was had within two months. We feel compelled, therefore, to resolve *Barker's* balancing test in favor of the Government and hold that McKim was not denied a speedy trial.

## II.

Because of their interrelation, we will consider together McKim's contentions regarding the sufficiency of the indictment, and the correctness of the court's charge to the jury.

The statute, quoted above,[5] provides a maximum sentence of five years or a $5,000 fine or both if the custody or confinement from which the defendant has escaped "is pursuant to lawful arrest" and is "by virtue of an arrest on a charge of felony" or a conviction of any offense, but provides a maximum sentence of only one year or fine of $1,000 or both if the custody or confinement is by virtue of a misdemeanor charge, prior to conviction. The indictment in the present case does not state whether the alleged offense leading to the custody was a felony or misdemeanor, a very important distinction here because the defendant had not even been brought before the United States Magistrate.[6]

In Theriault v. United States, 5 Cir. 1970, 434 F.2d 212, although the indictment charged arrest on the charge of a felony, there was no proof introduced at trial on whether the charge was a felony or a misdemeanor. This Court held that the defendant's three-year sentence must be vacated and that he must be resentenced in accordance with the penalties provided in the statute for escape from custody or confinement on the charge of a misdemeanor. We reasoned that the felony provisions of the statute might be analogized to a statute providing enhanced punishment in cases where specified aggravating circumstances appeared. Noting that courts had sanctioned the imposition of the lesser sentence provided by the statute on remand for resentencing when proof of the aggravating circumstances failed in such cases, we concluded in *Theriault* that the sentence should be vacated and the case remanded for resentencing under the provisions relating to escape from custody on the charge of a misdemeanor.

**5.** See fn. 1.

**6.** See fn. 2.

In the case before us, the indictment was silent as to the nature of the offense leading to the custody, and the court did not charge the jury at all on the point. There was only a passing hearsay reference to a felony arrest during the course of trial, hardly enough to constitute a basis for a jury finding of guilt beyond a reasonable doubt, particularly when the jury was not even instructed on the point. The proof was sufficient to prove, at most, escape from custody on account of a misdemeanor charge. The appropriate remedy, following *Theriault*, would be to vacate the sentence and remand for resentencing. This would result in McKim's immediate release, inasmuch as he has been in confinement since September 1972, and in confinement under the judgment of conviction in the present case since January 1974, and the maximum sentence that could be imposed on resentencing would be one year imprisonment.

We must, however, proceed and consider McKim's further contention that his conviction was invalid in any event because the custody from which he escaped was not the result of a lawful arrest. This question would not be mooted by a remand for resentencing, because the trial court might still assess a fine. Moreover, the Supreme Court has held in the habeas context that, because of the substantial collateral consequences flowing from a criminal conviction even after the sentence imposed has been satisfied, unconditional release from custody did not moot an application for habeas relief. Carafas v. LaVallee, 1968, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554. If collateral consequences prevent mootness of a habeas application upon unconditional release, they prevent mootness of the further issue McKim raises in his direct appeal.

The escape statute must be read in the disjunctive insofar as the nature of the confinement and custody it governs is concerned. It proscribes escapes and attempts to escape from (1) the Attorney General or his authorized representative, or (2) from any institution in which he is confined by direction of the Attorney General, or (3) from custody under any judicial process issued under the laws of the United States, or (4) from custody of an officer or employee of the United States "pursuant to lawful arrest." As far as our research shows, the quoted language of the statute has never been construed. The Government argues in favor of broad proposition that "one may not test the legality of his confinement by escape," but none of the cases cited in its brief deal with an escape at the same juncture in the criminal process involved in the present case, and in each of them the statement is dictum. Whatever might be said of the relevance of the lawfulness of an arrest in a prosecution for escape *after* conviction, the phrase "pursuant to lawful arrest" modifying "custody" between the time the suspect is apprehended and the time he is presented to the magistrate is something more than inert verbiage. We have examined what little legislative history exists of the present statute and its predecessors, and have found in it no suggestion on the proper construction of this language. We give effect to the literal meaning of the statutory language and hold that a lawful arrest resulting in custody from which he escaped is an essential element of the offense under the portion of 18 U.S.C. § 751(a) with which McKim was charged, and under the language of the indictment itself. To the extent the circumstances of the arrest raise questions of fact, these questions must be submitted to the jury; to the extent they raise questions of the legal significance of facts, as they often will in cases involving the Fourth Amendment and the exclusionary rule, they are questions for the trial court.

The Government's brief contains very little on the point, but in oral argument its counsel proffered a number of "fallback" positions in the event we should reject its citation of the dictum that "one may not test the validity of one's confinement by escape." We should find an arrest "unlawful" for the purposes of the escape statute, he argues, only when

the conduct of the arresting officer is such as to impose civil or criminal liability on the officer, as in the case of malicious use of excessive force in making an arrest. Or at least, he argues, we should not hold an arrest "unlawful" in a prosecution for escape unless the arresting officer has not acted "in good faith" or "reasonably." In any event, counsel concludes, "lawfulness" of an arrest for the purposes of the escape statute should be governed by the standard of lawful police conduct at the time the arrest was made.

We see no merit in these contentions. The stop, search, and arrest in McKim's case were contemporaneous, and this Court in United States v. McKim, 5 Cir. 1973, 487 F.2d 305, held that there was neither reasonable suspicion nor probable cause for the stop and search conducted by the border patrol. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The problem here is whether evidence obtained by a stop and search that violated the Fourth Amendment may nevertheless afford probable cause for the contemporaneous arrest, and hence render it "lawful" for the purposes of the escape statute.

■ The question whether the arrest was lawful is like any other question of law that arises in litigation in the sense that on appellate judicial review it is the duty of the court to determine whether the conduct in question was lawful in light of the constitutional standard established when the case comes before it. It is true that many holdings in the area of search and seizure, an area closely related to the question before us, have been denied retrospective sweep, but the benefits of those holdings are invariably extended to the litigants who have brought the question before the court. We must, then, determine the lawfulness of the arrest under the constitutional standard of today.

■ This case is unusual in that, at the time of McKim's trial on the escape charge, issues central to the determination of the lawfulness of the *arrest* had already been litigated between the same parties, and had been decided in McKim's favor. We refer, of course, to the earlier appeal to this Court that determined that the *stop* and *search* violated the Fourth Amendment. This Court has said before that "[t]he aversion to the exploratory search has deep roots, . . . and the fourth-amendment condemnation of this practice refutes the State's circular argument that the fruits of the search can justify the arrest . . . ." Texas v. Gonzales, 5 Cir. 1968, 388 F.2d 145, 148. As Professor Wright has noted, "[a]n otherwise legal search or arrest cannot stand if probable cause for it was established only by a prior illegal search." 3 Wright Federal Practice & Procedure, Criminal § 677, at 135 (citations omitted).

■ Where, as here, the stop, search, and arrest are contemporaneous, probable cause to arrest cannot be predicated upon evidence obtained in a stop and search violative of the Fourth Amendment. It is at this point that the doctrine of collateral estoppel, held to be incorporated in the Fifth Amendment guarantee of freedom from double jeopardy in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, comes into play. It is true that the doctrine has a limited ambit and, as has been noted, "will not often be available to a criminal defendant. In most cases the defendant enters a general plea of not guilty. Because the prosecution is required to prove every element of the crime beyond a reasonable doubt, the court's instructions usually offer the jury several theories upon which the defendant may be acquitted. Collateral estoppel is therefore of limited value because it is not often possible to determine with preci-

sion how the judge or jury has decided any particular issue." Schaefer, Unresolved Issues in the Law of Double Jeopardy: Waller and Ashe, 58 Calif.L.Rev. 391, 394 (1970). The present case, however, is one in which the earlier determination of the particular issue of the lawfulness of the stop and search was free from doubt, since the Fourth Amendment ground was the only one upon which the earlier conviction was reversed. It follows that, at the trial in the present case, the defendant was entitled to the benefit of collateral estoppel on the issue of the lawfulness of the stop and search, the effect of which would have been, as we have said, to negate the lawfulness of the arrest.

█ Even if the collateral estoppel element were not present in this case, the conviction is properly reversed on an alternative ground. The trial court forbade any inquiry into the lawfulness of the arrest. Because we hold that a lawful arrest is an essential element of the offense charged under the statute and the indictment, and must be demonstrated by proof beyond a reasonable doubt, it follows that the court's failure to take proof on the issue was reversible error.

The judgment of conviction is reversed.

COLEMAN, Circuit Judge (concurring).

I concur in the within and foregoing opinion for the reason that I understand it as applying only to those cases in which the escape occurred subsequent to arrest and before the prisoner is presented to the Magistrate for a committal hearing.