**UNITED STATES of America**

v.

**Eric R. CLARKE, Appellant in No. 14805,**
**and**
**Horace R. Johnson, Appellant in**
**No. 14806.**

**Nos. 14805, 14806.**

United States Court of Appeals
Third Circuit.

Argued Oct. 9, 1964.

Decided March 31, 1965.

John Rodgers Carroll, Philadelphia, Pa., for Clarke.

Robert N. C. Nix, Jr., Philadelphia, Pa., for Johnson.

Joseph H. Reiter, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on the brief), for appellees.

Before KALODNER, GANEY and FREEDMAN, Circuit Judges.

KALODNER, Circuit Judge.

Following a jury trial, the defendants, practicing physicians, were found guilty of conspiring to violate the federal narcotic laws [1] and making unlawful sales of narcotics drugs.[2]

They prosecute their appeals on the grounds that (1) the trial judge erred in refusing to withdraw a juror following testimony of a government witness with respect to prior, unrelated unlawful narcotic sales by the defendant Clarke, and (2) the defense of entrapment was established as a matter of law in the government's case.

The appeals followed the trial judge's denial of the defendants' motions for judgments of acquittal and/or a new trial. 224 F.Supp. 647 (E.D.Pa.1963).

We will first consider the motion for a new trial. It is directed solely to the trial judge's denial of the defendants' motions for withdrawal of a juror which were premised on the following testimony of a government witness, John Ripa, a federal narcotic agent, during his direct examination by Mr. Reiter, the prosecutor.

"Q. In driving Mr. Clarke was there any conversation during that drive home?

"A. I am not sure whether the conversation was in the car or back at the office, but there was other conversation where Dr. Clarke told me that he furnished a considerable amount of cocaine to a fellow in New York City—

"Mr. Carroll: I object.

"Mr. Reiter: I withdraw that question.

"Mr. Carroll: I move for the withdrawal of a juror.

"Mr. Nix: I join in that on behalf of Dr. Johnson.

"The Court: Denied. The jury will disregard anything that they have just heard in the last minute." (N.T. p. 82)

The sum of the defendants' contention is that since their defense is entrapment, the testimony that Clarke had admitted to Agent Ripa that he had, prior to the unlawful sales charged in the indictment, "furnished a considerable amount of cocaine to a fellow in New York City", was so prejudicial that no instruction to the jury to disregard it could have "cured" it.

The government's position is that (1) the prompt instruction given by the trial judge to "disregard" the mooted testimony "removed any possible prejudice"; and (2) the evidence could have been admitted as relevant as bearing on the defendants' "state of mind, knowledge, or degree of wilfullness" since the defense was entrapment.

The short answer to the government's second point is that it not only did not attempt at the trial to justify the stricken testimony as admissible because of its possible bearing on the defense of entrapment, but actually withdrew it as evidence when it withdrew the question which precipitated it.

In rejecting the defendants' contention, the trial judge said (p. 650):

"* * * the Court, at the time of the instruction to the jury to dis-

1. 18 U.S.C.A. § 371.

2. 26 U.S.C.A. § 4705(a).

regard the testimony, looked directly at the jury to determine the effect of the prompt and direct instruction. It was heartening to the Court to see all of the jurors, including the alternates in the box, nod unanimous assent to the instruction of the Court.

"At this juncture of the case, it is only the trial Judge who can determine the effect on the jury of prompt and direct instruction. It was the considered judgment of the Court that the jury had understood the instruction, had accepted it, and that they thereafter did not consider the stricken testimony in further deliberation of the case. * * *

"The instruction in the instant case was prompt and clear and removed any possible prejudice to the defendants because of the testimony in question. To say the jury disregarded the Court's instruction on this one statement is to engage in pure speculation which is unfounded. Had the Court any idea that this episode would prejudice the defendants in the jury's mind, the Court would not have hesitated for one minute in withdrawing a juror. While occurrences such as these are unfortunate, unless defendants' rights are prejudiced, the trial should not be unduly called off or delayed. It is the considered judgment of the Court that this occurrence did not react to the detriment of the defendants."

The trial judge's view, that his "prompt and direct" admonition to the jury to disregard the properly stricken challenged statements of Ripa, "removed

any possible prejudice * * * in the jury's mind" brings to mind the immortal lines:

"The Moving Finger writes; and, having writ,

Moves on: nor all your Piety nor Wit,

Shall lure it back to cancel half a Line,

Nor all your Tears wash out a Word of it."

Rubáiyát, Stanza 71

Here, the critical crux of the defense was that in March and April 1962 the defendants; while under pressure of financial distress, had been seduced by the government's specially employed agent, their long-time friend, New York bartender Joseph Flores, into making unlawful sales of narcotics.[3]

█ Entrapment occurs "* * * when the criminal design originates with the officials of the government, and they implant in the mind of an *innocent* person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells v. United States, 287 U.S. 435, at page 442, 53 S.Ct. 210 at page 212, 86 A.L.R. 249 (1932). (Emphasis supplied.)

In Sherman v. United States, 356 U.S. 369, p. 372, 78 S.Ct. 819, p. 821, 2 L.Ed. 2d 848 (1958) the critical test in determining whether the defendant was entrapped was stated as follows:

"To determine whether entrapment has been established, *a line must be drawn between* the trap for the unwary *innocent* and the trap for the unwary *criminal*." (Emphasis supplied.)

Here, Agent Ripa's stricken testimony, that the defendant Clarke had ad-

3. The record discloses that in February 1961, government agent Ripa, pretending he was a narcotics peddler, contacted Flores, a suspected peddler, in New York and persuaded him and one Sonny La-Forte, also a suspected peddler, to come to Philadelphia, and contact Dr. Clarke with a view to making purchases of narcotics; that the effort was fruitless as was a similar contact in the summer of 1961; in February 1962 Ripa disclosed his identity as a narcotics agent to Flores and engaged him as a "special employee" of the government.

mitted unlawful trafficking in cocaine in the past, struck at the very heart of the defense of entrapment which is available only when the government officials "implant in the mind of an *innocent* person the disposition to commit the alleged offense." Keeping in mind the abhorence and revulsion with which decent citizens regard those who unlawfully traffic in narcotics, it cannot be gainsaid that the nature of the testimony was of such critical and grave proportions as to irretrievably scorch itself into the conscious and subconscious minds of the jury. The most valiant effort on the part of a conscientious juror to obey the trial judge's admonition to disregard the testimony could only be an exercise in futility. It is one thing to "strike" evidence from notes of testimony; it is something else again to "strike" its searing impress from a juror's mind.

We had occasion, in Beck v. Wings Field, Inc., 3 Cir., 122 F.2d 114 (1941), to consider a situation where a trial judge, in a civil suit, refused to grant a motion for withdrawal of a juror because of "highly improper" testimony of a witness. There too, the trial judge said to the jury "I want to say to the members of the jury that I want you to disregard that evidence entirely. That has nothing to do with this case." (p. 115)

We there said (pp. 116–117):

"The question * * * with which we have to deal is whether the prejudicial and harmful effect of the volunteered remark could possibly be eradicated from the jury's thinking while deliberating upon the case. If it could, then no harm was done and the trial court's refusal to withdraw a juror was not error, for the learned trial judge did everything possible in an effort to have the jury banish from their minds the thought which the witness had improperly injected. But, after careful consideration, we are of the opinion that this was not legally sufficient. The only way that the defendant can be

protected against the strong possibility of harm from the improper occurrence at trial for which it was in no way responsible is by having a new trial.

" * * * If prejudice remains after instructions to disregard have been given, instructions are patently inefficacious. In such instance, the withdrawal of a juror becomes mandatory. * * * [T]he effect of the entire episode was such as to raise grave doubt that the jury was unaffected by the improper remark and the circumstances attending it. The motion to withdraw a juror should, therefore, have been granted and a mistrial directed."

In the leading case of Throckmorton v. Holt, 180 U.S. 552 p. 567, 21 S.Ct. 474 p. 480, 45 L.Ed. 663 (1901) the Supreme Court spelled out the applicable rule with respect to evidence stricken by the trial judge as follows:

"The general rule is that if evidence which may have been taken in the course of a trial be withdrawn from the consideration of the jury by the direction of the presiding judge, that such direction cures any error which may have been committed by its introduction. Pennsylvania Co. v. Roy, 102 U.S. 452, 26 L.Ed. [141] 142; Hopt v. Utah, 120 U.S. 430, 438, 30 L.ed. 708, 711, 7 Sup.Ct.Rep. 614. But yet there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission, and in that case the general objection may avail on appeal or writ of error."

In Mora v. United States, 190 F.2d 749 (5 Cir. 1951), where the trial court in its charge to the jury told it to disregard confessions of a co-conspirator, the judgments of conviction were reversed and a new trial granted on the

ground that the instruction of the court did not cure the error.

In so holding the Court said (p. 753):

" * * * the conclusion is inescapable that the jury was unwilling or unable to follow the court's belated instruction *to disregard those confessions as evidence* * * *. *We cannot say with fair assurance that the jury was not substantially swayed* by the use of Tangney's confessions * * *." (Emphasis supplied.)

Again, in Holt v. United States, 94 F.2d 90 (10 Cir. 1937) the court withdrew a statement by a witness who was a co-conspirator and instructed the jury to disregard it. The jury returned a verdict of guilty. In reversing the judgment of sentence the Court said (p. 94):

" * * * where the character of the evidence is such that *it is likely to create so strong an impression on the minds of the jurors to the prejudice of the defendant, that they will be unable to cast it aside* in the consideration of the case, a mistrial should be ordered." (Emphasis supplied.)

The Supreme Court has applied the rule stated in the foregoing cases to situations where inadmissible evidence has been submitted to a jury.

Thus, in Kotteakos v. United States, 328 U.S. 750, pp. 764–765, 66 S.Ct. 1239 p. 1247, 90 L.Ed. 1557 (1946) where inadmissible evidence had been submitted to the jury, the Court in reversing the judgment of conviction said:

"To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum. * * * In criminal causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right

in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. *The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.* * * *

" * * * if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, *it is impossible to conclude that substantial rights were not affected.* The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. *It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."* (Emphasis supplied.)

As already indicated we are of the opinion that in the instant case, it cannot be said "with fair assurance" that the jury's verdicts here were "not substantially swayed" by the stricken testimony, and thus "it is impossible to conclude that substantial rights were not affected". Accordingly, the judgments of conviction here cannot stand.

The defendants' second ground of these appeals—that the defense of entrapment was established as a matter of law in the government's case—is utterly without merit.

It would serve no useful purpose to dwell on this issue. We are in complete accord with Chief Judge Clary's excellent analysis of the issue and his disposition with respect to it in his exhaustive opinion.

For the reasons stated the judgments of conviction will be vacated and the causes remanded to the District Court with directions to grant new trials.