Lewis Elmer **FRAYER**, Plaintiff,

v.

**John W. TURNER**, Warden, Utah State Prison, et al., Defendant.

No. C 9–69.

United States District Court
D. Utah,
Central Division.
March 3, 1969.

No counsel for petitioner.

Vernon Romney, Atty. Gen. of the State of Utah, for defendant.

## ORDER DENYING WRIT OF HABEAS CORPUS

CHRISTENSEN, District Judge.

Petitioner, a state prisoner, was charged with first degree murder, convicted by a jury of second degree murder, affirmed on appeal, Utah v. Frayer, 17 Utah 2d 288, 409 P.2d 968 (1966), and is presently confined in the Utah State Prison pursuant to that conviction.

It is alleged in the petition for a writ of habeas corpus that during the course of petitioner's trial in the Second Judicial District Court in and for Davis County, State of Utah, on November 22, 1963, a newspaper reporter "ran into the courtroom and yelled the President has been murdered; President Kennedy has just been shot." Trial counsel did not move for a mistrial or otherwise object to or claim any potential prejudice introduced from this occurrence, nor was the point presented or considered on appeal.

Petitioner has presented his contentions to the state courts and has exhausted his state remedies. He first filed a petition for writ of habeas corpus or in the alternative coram nobis in the Third Judicial District Court and counsel was appointed to represent him. He alleges that no evidentiary hearing was held on that petition and apparently no disposition was ever made of it; but the later order of the Supreme Court recites that a hearing was had and an adverse order entered in the district court. In any event, the petitioner subsequently petitioned the Utah Supreme Court for a writ of habeas corpus "ad prosequendum", attaching a copy of his petition to the Third District Court. The Utah Supreme Court denied the writ on the ground that the contention should have been raised on appeal and was not collaterally reviewable.

The court is mindful that lack of a fair trial denies due process and that redress lies within the ambit of habeas corpus. Baker v. Hudspeth, 129 F.2d 779 (10 Cir.), cert. denied sub nom. Baker v. Hunter, 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546 (1942). Cf. Odell v. Hudspeth, 189 F.2d 300 (10 Cir.), cert. denied 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656 (1951). On the other hand, the courts have frequently stated that a defendant is entitled to a fair trial, not a

perfect one. *See, e. g.*, Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

 One reported opinion has dealt with a matter pertaining to the Kennedy assassination and is worth mentioning although it is not directly in point. *See* United States v. Clarke, 224 F.Supp. 647 (E.D.Pa.1963), vacated on other grounds, 343 F.2d 90 (3d Cir. 1965). In that case, the court refused to withdraw a juror in a federal narcotics prosecution notwithstanding the trial's disrupted continuity following the assassination. The court recessed the afternoon session of the trial and reconvened the following Tuesday. There was no interruption of the trial as occurred in our case. The court found the delay discretionary and unprejudicial, and termed the assertion that the jury would "rationalize a traffic in narcotics with the assassination of a President of the United States * * *" completely illogical." There is more point to the present contention that the assassination might have been associated in the minds of jurors with the pending first degree murder charge. But such an association would hardly be greater than the numerous mental associations having no actual bearing upon cases under adjudication but which might always be suspected from current news. If this were the only problem, the petitioner's contention would merit little notice, but the alleged interruption of the tranquility of the trial presents an additional facet precluding light rejection of the petition. After careful consideration, I have concluded nonetheless that the petition on its face is insufficient to justify the issuance of a writ of habeas corpus.

Except for the allegation that the statement had been made and the conclusion that "the jury was in such a state of mind that they could not think clearly", the petitioner's contentions are all in the nature of arguments. For example, he says:

"Plaintiff submits further that both trial counsel and appellate counsel either overlooked or were negligent in first trial counsel failure to seek a mistrial on the grounds of the possibility of the effect of prejudice such a statement made by a news reporter would have had on the jury. And the counsel appointed on appeal was probably unaware of the statement but it should have been brought up on appeal if any interest was taken in the case by appellate counsel had he been aware of said statement. There can be no question a statement the President has been shot, murdered, would startle anyone and could very easily interfere with a person's state of mind in reaching a verdict on a murder offense. Plaintiff submits he was not afforded a fair and impartial trial nor due process of law."

 The real question here is whether the facts alleged in and of themselves indicate error or deficiencies of constitutional dimensions. Under certain circumstances constitutional errors can be waived although they are not necessarily foreclosed by the doctrine of res judicata, Smith v. Yeager, 393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968). Nothing in the petition indicates that the circumstances at the time were such that the petitioner, as advised by qualified trial counsel, deemed the incident significant or prejudicial. Certainly, the occurrence was unusual and unfortunate, but the experienced trial judge presumably did whatever was necessary to cope appropriately with the situation, and again, there is nothing in the petition to indicate the contrary. The influence on the jury, if any, could have been essentially the same as if the jurors read or heard information concerning the President's death immediately following the court session but out of the courtroom. Nothing suggests that aside from a momentary effect any influence penetrated the deliberations in the jury room. The jury will not be presumed to have so violated the court's instructions and common sense as to confuse an entirely different situation with the defendant's.

It would seem to me that a hearing could add nothing in view of the limited

claims of the petition. On what basis would evidence be taken from jurors after this lapse of time? Would they be asked whether they decided the case wholly upon the evidence and the instructions of the court without the influence of any outside or collateral matters? There is nothing to indicate that they did not and it would seem a violation of the jury system, as well as a futility, to attempt to pierce their deliberations by presuming that they did. Should the judge be called at this late date to testify whether he took appropriate measures to restore decorum and to frame his instructions and the course of the trial to ensure a verdict based wholly on the evidence in the case? There is no indication that he did not. Should the defendant and his counsel have license to accept the situation without making any objection or complaint and thus perhaps await the outcome with the assurance that if it were not satisfactory the point could be pressed later? Indeed, did the jury's verdict of second degree murder, in spite of the charge of first degree murder and the appropriate submission of both charges, partially result from the trial tactics of having the petitioner's claimed lack of premeditation considered against the obvious premeditation of the Kennedy assassination?

Such practicalities, as well as basic concepts, explain the established rule that habeas corpus will not issue as a substitute for appeal to correct errors in the course of a trial, that counsel cannot decide that irregularities affect their clients too little to justify calling the attention of the trial court to them and yet preserve them for consideration on habeas corpus, and that mere subjective conclusions of prejudice in a petition for a writ of habeas corpus claiming trial irregularities will not warrant a collateral attack upon a verdict otherwise appearing as here regular, lawful and supported by the evidence. Glasgow v. Moyer, 225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147 (1912); United States v. Rosenberg, 200 F.2d 666 (2d Cir. 1952);

Malofsky v. United States, 293 F.Supp. 1122 (S.D.N.Y., 1968).

I conclude from the petition, therefore, that there were no errors of constitutional dimension, and that in any event the Utah Supreme Court was quite right in holding that the irregularity complained of by petitioner could have been reviewed only on appeal.

Writ denied.