

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-16-2003

# USA v. Adesanya

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1020

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"USA v. Adesanya" (2003). *2003 Decisions.* Paper 57.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/57

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1020

UNITED STATES OF AMERICA

v.

CAROLINE ADESANYA,
Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C.  Criminal No. 01-cr-00687)
District Judge:  Honorable Anne E. Thompson

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2003

Before:  RENDELL, BARRY and CHERTOFF, Circuit Judges.

(Filed December 16, 2003)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Following a jury trial in the United States District Court for the District of New

Jersey, Caroline Adesanya was convicted of bank fraud, in violation of 18 U.S.C. § 1344,

for depositing a counterfeit check into her business's checking account on September 12,

2000.  Adesanya was sentenced to 24 months, followed by 4 years of supervised release,

and fined $5,000. On appeal, Adesanya challenges her conviction, advancing two basic arguments. First, she contends that the District Court should have granted her Rule 29 motion for judgment of acquittal because, in her view, the Government failed to produce sufficient evidence to support a finding that she knew the check was counterfeit beyond a reasonable doubt. Second, she urges that the District Court abused its discretion in admitting evidence of other bad acts under Rule 404(b) during the Government's rebuttal case. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We will affirm.

As we write solely for the parties, we will recite only those facts relevant to the issues before us. Adesanya, a registered nurse, was the president and a founding member of an agency that contracted to provide per diem nursing services for health care facilities. Her business, called the Angel Health Care Agency ("AHCA"), had its headquarters at her home in Matawan, New Jersey. By September of 2000, the other founding members of AHCA had resigned, and the business was earning very little money. Adesanya testified that her boyfriend, who lived with her at the time, was a businessman who exported vehicles to Nigeria. Despite the fact that he lacked experience or knowledge in the health care field, Adesanya claimed that he offered to develop some business for AHCA and make it a success. According to Adesanya, she allowed him to take over the company, and she withdrew from her position at AHCA completely.

Adesanya testified that on September 11, 2000, she drove her boyfriend to the

2

airport where he was to embark on a business trip to Nigeria. She asserted that as they left her house that day, her boyfriend handed her a check from "Host Marriott Services" payable to AHCA in the amount of $125,356.87, and he asked her to deposit it in the business's checking account. She did so on the morning of September 12, 2000, when she also conducted some personal banking transactions. The bank subsequently determined that the check Adesanya had deposited into the business account was counterfeit, and froze all of Adesanya's accounts. Soon after the deposit, someone giving the name "Caroline A" called the bank and attempted to have money wired out of the AHCA business account in the amount of the counterfeit check. Adesanya was arrested in January of 2001, and she repeatedly denied depositing the check.

At trial, the pivotal issue in the case was whether Adesanya knew that the check she deposited was counterfeit. Her defense was that she trusted her boyfriend and had no reason to suspect that the check was not genuine. She testified as the only witness in her defense. The Government impeached her by cross-examining her about prior bad acts pursuant to Federal Rule of Evidence 608(b), and then, over Adesanya's objection, presented extrinsic evidence of some of those acts in rebuttal pursuant to Rule 404(b). The prior bad acts that are relevant on this appeal involved Medicare checks that were stolen from a nursing home at which Adesanya was employed as a weekend supervisor on the night shift. The jury convicted Adesanya, and the District Court denied her post-verdict motion for judgment of acquittal, finding that there was sufficient evidence of her

3

knowledge to support the conviction. Adesanya filed this timely appeal.

We will first examine whether the District Court erred in denying Adesanya's Rule 29 motion. We exercise plenary review over the District Court's ruling on a post-verdict motion for judgment of acquittal. United States v. Smith, 294 F.3d 473, 477 (3d Cir. 2002); United States v. Taftsiou, 144 F.3d 287, 290 (3d Cir. 1998). We show deference to the jury's verdict by viewing the evidence in the light most favorable to the Government and asking whether it "would allow a rational trier of fact to convict." United States v. Hart, 273 F.3d 363, 371 (3d Cir. 2001).

Under federal law, a person commits bank fraud if she "knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys . . . owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344 (emphasis added). In her testimony at trial, Adesanya admitted to depositing the check, and she did not challenge the evidence showing that the check was counterfeit and that the bank was federally insured. Thus, the only question for the jury was whether she knew that the check was counterfeit when she presented it at the bank. And, as we review the sufficiency of the evidence supporting Adesanya's conviction, we are only concerned with the evidence relevant to the knowledge element of the crime.

We are satisfied that the evidence adduced at trial in the Government's case-in-chief was sufficient to allow a reasonable juror to conclude that Adesanya had actual

4

knowledge that the check was counterfeit, or at least that she was "willfully blind" about that fact. We have held that the knowledge element of a crime is satisfied on a theory of "deliberate ignorance," or "willful blindness," where a jury could find that the defendant "deliberately closed his eyes to what otherwise would have been obvious to him" concerning the fact in question. See United States v. Stewart, 185 F.3d 112, 126 (3d Cir. 1999); United States v. Caminos, 770 F.2d 361, 365 (3d Cir. 1985). To find knowledge on this theory, the jury must be able to conclude that "the defendant himself was subjectively aware of the high probability of the fact in question, and not merely that a reasonable man would have been aware of the probability." Caminos, 770 F.2d at 365. Here, the Government in part advanced what was essentially a "willful blindness" theory of proving knowledge, and the District Court gave the jury a charge that was consistent with our decision in Caminos.

A careful review of the record reveals that the evidence supporting knowledge – whether actual, or on a theory of willful blindness – was sufficient to allow a reasonable jury to find that the Government proved that element of the crime beyond a reasonable doubt. The Government demonstrated the following key facts relevant to Adesanya's knowledge that the check was counterfeit: 1) AHCA's business was virtually non-existent at the time she cashed the check; 2) the largest deposit ever made into AHCA's business account was for approximately $4,000; 3) besides Adesanya, no nurses or other employees remained on staff for AHCA; 4) AHCA had never done business with "Host

Marriott Services" or any similarly-named organization; 5) Host Marriott Services did not contract with AHCA for any work, and had never written a check to AHCA; and 6) the address given for AHCA on the check was not the correct address of AHCA headquarters.

From these facts, a reasonable juror could find that Adesanya was at least willfully blind to the counterfeit nature of the check. Ignoring the question of how Adesanya came into possession of the check, a juror could reasonably conclude that the unusual amount of the check, the unfamiliarity of the institution named on the check, the mistake in designating AHCA's location, and the lack of any nurses on staff capable of performing any significant contract for services – all facts to which Adesanya admitted when she testified – effectively put her on notice that the check was most likely fake. The only testimony to the contrary was offered by Adesanya herself, but her credibility was severely damaged on cross-examination. The District Court correctly noted that the jury obviously did not believe her version of the events. Moreover, even if they believed that Adesanya's boyfriend gave her the check, the facts listed above would still support a finding of willful blindness. Accordingly, Adesanya's challenge to the sufficiency of the evidence fails, and we find that the District Court properly denied her Rule 29 motion.

Next, we will consider whether the District Court abused its discretion in allowing the Government, in its rebuttal case, to present extrinsic evidence of other bad acts allegedly committed by Adesanya. Where the defendant objected during the proceedings

below, we review the decision to admit evidence of uncharged offenses for abuse of discretion. United States v. Boone, 279 F.3d 163, 187 n.17 (3d Cir. 2002); United States v. O'Leary, 739 F.2d 135, 136 (3d Cir. 1984).

Evidence of other uncharged acts attributable to the defendant is not admissible under the Federal Rules of Evidence to prove the defendant's bad character. Fed. R. Evid. 404(b). However, such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. In deciding whether to admit evidence of other bad acts under Rule 404(b), a district court must evaluate whether the jury could "reasonably conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681, 689 (1988). In other words, the party offering evidence pursuant to Rule 404(b) must present sufficient proof to allow a reasonable jury to find by a preponderance of the evidence that the defendant committed the acts in question. Id. at 690.

Here, the Government sought to introduce evidence regarding three Medicare checks that were stolen from Adesanya's workplace prior to September 12, 2000. The following evidence was offered as the Government attempted to link Adesanya to the stolen checks: 1) the checks in question were expected to arrive at the nursing home on Saturdays when Adesanya worked; 2) the checks were kept in an office area to which Adesanya had access with her supervisor's key; and 3) two of the checks were subsequently altered and deposited by a man from Chicago who was identified by

7

Adesanya as someone she knew.

We need not determine whether this evidence of an unrelated incident would be sufficiently probative to warrant its admission to show opportunity for Adesanya to steal Medicare checks from her place of work, because even if the District Court did abuse its discretion in admitting extrinsic evidence related to the stolen checks, it was harmless error.[1]  The evidence was only offered in the Government's rebuttal case.  As we explained above, a jury could have reasonably convicted Adesanya based on the evidence adduced during the Government's case-in-chief, especially after the credibility of the only witness presenting testimony to the contrary – Adesanya herself – was essentially destroyed.  In light of that, we conclude that "it is highly probable that [the 404(b) evidence] did not contribute to the jury's judgment of conviction." Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir. 1976).

Accordingly, the Judgement and Commitment Order of the District Court will be

---

[1]Counsel for Adesanya argued strenuously at trial that the evidence went far beyond what is permissible as "other acts" evidence under Rule 404(b), asserting that Adesanya was not sufficiently linked to the alleged conduct and, therefore, admission of evidence related to that uncharged conduct would be unduly prejudicial under Rule 403. The District Court, however, analyzed the issue primarily under Rule 608(b) and allowed the Government to discuss the other acts during Adesanya's cross-examination, finding that the evidence was probative of her credibility.  But it then allowed the Government to introduce extrinsic evidence related to these acts on rebuttal, pursuant to Rule 404(b), although such evidence would not have been permissible under Rule 608(b).  The District Court apparently treated these two evidentiary issues together, rather than conducting a separate analysis of the proper standards applicable under each rule, but this confusion does not ultimately impact our decision.

AFFIRMED.

_____

TO THE CLERK OF COURT:

      Please file the foregoing opinion.

                    /s/  Marjorie O. Rendell
                    Circuit Judge