

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2009

# Gov VI v. Denise Donovan

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3895

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Gov VI v. Denise Donovan" (2009). *2009 Decisions.* Paper 1112.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1112

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-3895

GOVERNMENT OF THE VIRGIN ISLANDS

v.

DENISE DONOVAN,
                                        Appellant

APPEAL FROM A JUDGMENT OF THE
DISTRICT COURT OF THE VIRGIN ISLANDS,
APPELLATE DIVISION
(D.C. Crim. No. 04-cr-000084-001)
Chief Judge: Honorable Curtis V. Gomez
District Judge: Honorable Raymond L. Finch
Superior Court Judge: Honorable Julio A. Brady

Argued:  April 23, 2009

Before: BARRY, HARDIMAN, and COWEN, <u>Circuit Judges</u>

(Opinion Filed: June 29, 2009)

Nycole A. Thompson, Esq. (Argued)
Tom Bolt & Associates
5600 Royal Dane Mall, Corporate Place
Charlotte Amalie
St. Thomas, VI 00802-6410

_Counsel for Appellant_

Matthew C. Phelan, Esq. (Argued)
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade, GERS Complex, 2nd Floor
Charlotte Amalie
St. Thomas, VI 00802

*Counsel for Appellee*

---

OPINION

---

BARRY, Circuit Judge

Following a jury trial, appellant Denise Donovan ("Donovan") was convicted of first degree murder, possession of a dangerous or deadly weapon with the intent to use the same during a crime of violence, and first degree assault with the intent to commit murder.[1] Donovan unsuccessfully challenged her convictions in the Appellate Division of the District Court of the Virgin Islands, and again challenges them here. We will affirm.

**Factual Background**

On March 11, 2002, Donovan was at work at a local market when she asked if she could borrow her co-worker's car – something she had never before done. She explained her request by saying that she had to deliver asthma medication to her daughter, and the co-worker lent her the car. Around 11:20 a.m., Donovan left work, and returned about fifty minutes later, at 12:10 p.m. Later that afternoon, her shift complete, Donovan left work, this time for the day. At approximately 3:00 p.m., she called the Virgin Islands Police Department stating that her boyfriend, Clayton Laurent ("Laurent"), had been murdered. The police immediately proceeded to Laurent's home, where they found his body.

Donovan told police that when she arrived at Laurent's home, she witnessed a struggle

---

[1] Donovan was sentenced to life imprisonment, a consecutive term of ten years, and a concurrent term of fifteen years with five years suspended. Her sentence is not at issue on this appeal.

-2-

between Laurent and a masked man wielding a knife. She claimed that she tried to wrest the knife away from the assailant, but only succeeded in doing so when it was too late: Laurent had been fatally stabbed, and the masked man fled the scene. Donovan's injuries were minimal, consisting of red marks on her neck and a minor cut on her finger.

An emergency medical technician at the scene noted that Laurent's body appeared stiff, as if rigor mortis had already begun to set in, and other witnesses testified that the blood on and around the body was dried and clotted. The state medical examiner concluded, after conducting an autopsy and hearing the observations about the stiff body and the dried blood, that the time of death was between 11:21 a.m. and 1:21 p.m. This time of death stands in stark contrast to Donovan's story and most particularly her claim that the murder occurred moments before 3:00 p.m.

Two days later, Donovan was arrested and charged with the murder. At trial, the government argued that Donovan used the fictitious story about the need to deliver asthma medication as a reason to borrow her co-worker's car, and thus to disguise her commission of the crime. The government further argued that Donovan murdered Laurent in cold blood, and then developed a cover story with her sister and daughter. That cover story, advanced by the defense at trial, claimed that the sister and daughter saw Laurent around 2:30 p.m., alive and well, picking up chicken from a local restaurant. The jury convicted Donovan on all counts.

## Discussion

Donovan asserts that the trial court erred in: (1) not allowing her to put a witness on the stand who would produce medical records showing that her daughter had asthma; (2) admitting character evidence about Laurent and prior bad acts evidence about Donovan, and; (3) admitting a racially-charged statement made by Donovan. The Appellate Division found no error with respect to the exclusion of the medical records witness and the admission of the racially-charged statement, and found that the admission of character evidence about the victim and certain prior bad acts of Donovan was harmless error. We have jurisdiction pursuant to 28 U.S.C. § 1291, and consider each issue below.

## I. Medical Records Testimony

The trial court did not permit the custodian of records at a local hospital to testify and produce medical records showing that Donovan's daughter had asthma. Aside from whether, as the trial court and the government believed, that evidence was a veiled attempt to put on an alibi defense (which Donovan had disclaimed any intent to do), there was no error here. Put simply: the evidence was neither relevant nor material to this case, and was thus properly

excluded. *See, e.g.*, Fed. R. Evid. 402; *Gov't of the V.I. v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992). There was testimony that Donovan's daughter had asthma, testimony that was never disputed. The issue, however, was whether Donovan *delivered* asthma medication to her daughter on the day of the murder. The proffered evidence would have shed absolutely no light on that issue.

## II. Character and Prior Bad Acts Evidence

Donovan claims, next, that the trial court erred in admitting testimony concerning Laurent's good parenting and Donovan's prior bad acts. We find no error that would require us to vacate her convictions.

The testimony about Laurent's good character, which largely concerned descriptions of him as a good father to his son, was likely admitted in error as it served no proper evidentiary purpose. Any error, however, was clearly harmless: the few fleeting statements were insignificant and, as discussed at more length *infra*, the evidence of Donovan's guilt was overwhelming.

Donovan's claim that the trial court erred in admitting testimony concerning her own prior bad acts, particularly testimony about two instances in which she threatened Laurent with a knife, is somewhat more substantial. Evidence of "other crimes, wrongs, or acts" is not admissible "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence, however, may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

On the one hand, the prior bad acts evidence could conceivably have been used by the jury to make the prohibited propensity inference – *i.e.*, once a dangerous knife-wielder, always a dangerous knife-wielder, although in doing so, the jury would have violated the trial court's instructions. On the other hand, however, the jury could have found that, consistent with those instructions, Donovan's prior threats with a knife showed, among other things, motive, intent, plan and absence of accident.

We need not decide whether the evidence of Donovan's prior threats was admitted in error because any error was harmless. *See, e.g.*, *United States v. Ali*, 493 F.3d 387, 392-93 n.3 (3d Cir. 2007) (stating that an error is harmless if it does "not appear the evidence had a substantial impact on the jury's verdict"). The evidence of Donovan's guilt was, as noted above, overwhelming. To begin with, Donovan's version of events was inconsistent, both internally as her story changed, and with the physical evidence at the scene of the murder, most particularly the rigor mortis and dried blood. Certainly, too, Donovan's odd behavior

following the murder, such as the phone calls to women that she believed had been sexually intimate with Laurent, is not indicative of a grief-stricken woman who had just witnessed her boyfriend's murder.

Moreover, the government presented a veritable smorgasbord of other damning evidence. That evidence included the coincidence of borrowing a co-worker's car at or about the estimated time of Laurent's death; Donovan's comments on the way to the police station about Laurent's alleged philandering; her minor injuries after supposedly doing battle with the knife-wielding assailant; the fact that there was no evidence that the masked man had run off in the direction claimed by Donovan; the fact that the K-9 patrol dog did not pick up the scent of a third party; and the government's cross examination, particularly of Donovan's sister, which destroyed the story about seeing Laurent picking up chicken long after the credible evidence so clearly indicated he was dead.

Additionally, the prior bad acts evidence did not go to the key question posed to the jury: whether Laurent was killed in the manner and at the time claimed by Donovan, or whether he died much earlier and Donovan concocted a cover story to disguise her commission of the crime. So viewed, the disputed evidence was ancillary to the main issue or issues of disputed fact. Finally, any prejudice was limited by the detailed limiting instructions the trial court gave to the jury after the prior bad acts testimony was admitted. *See, e.g.*, *United States v. Vitillo*, 490 F.3d 314, 329 (3d Cir. 2007) (noting relevance of instructions). Accordingly, we find that any error, if error there be, had no substantial effect upon the verdict.[2]

### III. Donovan's Racially-Charged Statement

Finally, Donovan argues that the trial court erred in admitting a racially-charged

---

[2] Donovan strenuously argues that the Appellate Division incorrectly stated the standard when it held that the admission of the character evidence and the prior bad acts evidence was harmless. We agree with Donovan that the harmless error analysis focuses on whether the error in question had a substantial effect on the verdict, and not on the distinct question of whether there was sufficient evidence, notwithstanding the error, to support the verdict. Applying the correct standard, and as noted above, we find that any error here had no effect on the verdict, given the substantial evidence of Donovan's guilt and the detailed limiting instructions of the trial court.

statement that she made to the warden of the prison to which she was taken following her arrest. The warden, who apparently knew Donovan, saw her and asked, "girl, that's you, what you doing here?" (App. 190.) Donovan responded, saying, "[t]hey say I kill the man, they locking me up for a frigging island man, they locking me up for a frigging island man." (*Id.* at 191.) The term "island man" is derogatory, and refers to persons of Eastern Caribbean descent. Laurent was of Eastern Caribbean descent, as was a majority of the jury.

The statement did have the potential for prejudice, as it may have engendered antipathy towards Donovan in the minds of the jurors. However, the statement was also quite probative insofar as it shows a striking lack of remorse indicative of malice aforethought and premeditation. Under Federal Rule of Evidence 403, relevant evidence need only be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice." This Rule 403 balancing is "within the sound discretion of the . . . Court," and we review "only for abuse of discretion." *See, e.g.*, *United States v. Pelullo*, 14 F.3d 881, 888 (3d Cir. 1994).

We find that the trial court's decision to admit the statement was not an abuse of discretion. The probative value of the statement was not substantially outweighed by the potential for prejudice.

## **Conclusion**

For the reasons set forth above, we will affirm the judgment of conviction.

*Dissent*

COWEN, Circuit Judge, concurring in part and dissenting in part.

I fully join in the Court's well-reasoned determination that no error was committed with respect to the proffered medical records evidence as well as the racially-charged statement made by Donovan. Nevertheless, I disagree with its determination that the admission of highly prejudicial character and prior bad acts evidence constituted harmless error. While I therefore concur in sections I and III of the Court's opinion, I respectfully dissent with respect to section II.

Initially, the majority indicates that the testimony regarding Laurent's character as a good father was likely admitted in error because such testimony evidently served no proper evidentiary purpose. As the Appellate Division appropriately noted, "[n]othing concerning Laurent's abilities as a father fits into a chain of logical inferences to make Donovan's guilt more or less likely." (AD15.) Turning to the more significant prior bad acts evidence, the

majority refrains from deciding whether such evidence was erroneously admitted on account of its subsequent finding of harmless error. However, the Appellate Division was clearly correct to find that this evidence was in fact inadmissible.

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible "to prove the character of a person in order to show action in conformity therewith." On the other hand, this rule does allow such evidence if it tends to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. We generally follow a multi-prong test to determine whether Rule 404(b) has been violated:

> To satisfy Rule 404(b), evidence of other acts must (1) have a proper evidentiary purpose, (2) be relevant under Rule 402, (3) satisfy Rule 403 (*i.e.*, not be substantially more prejudicial than probative), and (4) be accompanied by a limiting instruction, when requested pursuant to Federal Rule of Evidence 105 that instructs the jury not to use the evidence for an improper purpose. "Other acts" evidence satisfies the first two requirements if it is "probative of a material issue other than character." In other words, there must be an articulable chain of inferences, "'no link of which may be the inference that the defendant has the propensity to commit the crime charged,'" connecting the evidence to a material fact.

United States v. Cross, 308 F.3d 308, 320-21 (3d Cir. 2002) (footnotes and citations omitted). In this appeal, we are confronted with testimony about two prior incidents where Donovan threatened Laurent with a knife. The majority, while acknowledging that this evidence could conceivably have been used by the jury to make a prohibited propensity inference in violation of the trial court's instructions, observes that the jury could also have found that the prior incidents "showed, among other things, motive, intent, plan and absence of mistake." I, however, have no hesitation in concluding that this evidence did not satisfy the proper evidentiary purpose and relevancy requirements stated above.

The Appellate Division expressly found that "[n]either incident had any relevance in Donovan's trial other than showing her general propensity to commit such acts." (AD16 (citation omitted).) In addition to pointing to the trial court's limiting instructions, the government offers several purported non-propensity justifications for its evidence. It therefore claims that one of the incidents showed that Donovan knew how easily Laurent could disarm her in an open frontal attack (and she accordingly attacked him from behind in order to commit the murder). Similarly, the other incident allegedly tended to show deliberation and premeditation because Donovan grabbed the knife in anger and then was still able to change her mind before actually using the weapon. But the government ultimately draws very tenuous connections between the two prior incidents and this first degree murder case. Far from claiming, for instance, that she killed the victim in the heat of passion, the whole gist of Donovan's defense was that another person actually committed

the murder (and that she fought with the real murderer himself).

In the end, there appears to be a single relevant yet impermissible purpose for the evidence at issue, namely, to show Donovan's character and her propensity to commit acts of violence, especially against the victim. The government's own motion in limine filed with the trial court actually stated that the proffered testimony "will show that the defendant has exhibited *violent and abusive behavior towards other[s] and the victim*." (AD46 (emphasis added).) In other words, the evidence clearly tended to show, in the apt words of the majority, that "once a dangerous knife-wielder, always a dangerous knife-wielder."

Accordingly, the Appellate Division was correct to find that it was wrong to admit evidence of the victim's good character as well as of the accused's own past criminal misconduct. However, the Appellate Division then incorrectly found that such evidentiary errors were harmless. Initially, it is significant that Appellate Division stated and then purported to apply the incorrect legal standard here. It stated, inter alia, that "[w]here there was sufficient evidence to support a conviction without the error, then the error was harmless and no new trial is necessary." (AD17 (citing Yohn v. Love, 76 F.3d 508, 523 (1996).) In the Yohn decision cited by the Appellate Division, we specifically observed that:

> The crucial inquiry is the impact of the error on the minds of the jurors in the total setting. *It is thus inappropriate to ask whether there was sufficient evidence to support the result, apart from the phase of the trial affected by the error.* The correct inquiry is whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error.

Yohn, 76 F.3d at 523 (emphasis added) (citing Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

The majority in the current appeal agrees with Donovan that the harmlessness analysis does not focus on the distinct question of whether there was sufficient evidence, notwithstanding the error, to support the verdict. Purporting to apply the proper approach, it finds that any error in admitting prior bad acts evidence had no substantial effect on the verdict because the evidence of Donovan's guilt was overwhelming, the prior bad acts evidence did not go to the key question posed to the jury, and the trial court's detailed jury instructions limited any prejudice resulting from the admission of this evidence. I agree that the government presented a great deal of evidence indicating that Donovan was guilty of first degree murder. It is also true that the trial court repeatedly instructed the jury as to the purposes for which it could use the prior bad act evidence. Nevertheless, "[a]n evidentiary error is harmless only if it is *highly probable* that the improperly admitted evidence did *not* contribute to the jury's judgment of conviction." United States v. Sallins, 993 F.2d 344, 348 (3d Cir. 1993) (emphasis added) (citing Gov't of V.I. v. Toto, 529 F.2d 278, 284 (3d Cir. 1976)). I find that this rigorous standard has not been met.

On the contrary, it appears highly likely that the prejudicial evidence of Donovan own

prior criminal misconduct played an important part in the ultimate outcome of her first degree murder trial.  In fact, Rule 404(b) actually rests on well-established concerns relevant to the current harmless error analysis.  Such prior bad acts evidence "is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."  Michelson v. United States, 335 U.S. 469, 476 (1948).  While such evidence may in fact be highly relevant, it is generally barred because of the "'risk that a jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.'" Old Chief v. United States, 519 U.S. 172, 181 (1997) (quoting United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982)).  In fact, the majority expressly recognizes that the prior bad acts evidence was "ancillary" to the key question at the trial, namely, "whether Laurent was killed in the manner and at the time claimed by Donovan or whether he died much earlier and Donovan concocted a cover story to disguise her commission of the crime."  But, in addition to hearing that the victim was a good father, the jury also heard testimony depicting Donovan as a violent and jealous person who had on two previous occasions threatened Laurent with a knife and, on one of these occasions, unsuccessfully attacked him.  Under the circumstances, the jurors certainly could have been led to decide this case based on this "ancillary" but highly prejudicial and inadmissible evidence purporting to show the defendant in a murder case as a dangerous knife-wielder.

For the foregoing reasons, I would reverse the Appellate Division's ruling affirming the conviction and remand this matter for a new trial.